UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN PEASE, Plaintiff, vs. CITY OF SAN DIEGO, and SAN DIEGO CITY CLERK ELIZABETH MALAND, in her official capacity, Defendants. | CASE NO. 14cv638-WQH-BLM<br>ORDER |

HAYES, Judge:

The matter before the Court is the Ex Parte Application for Temporary Restraining Order ("Application for Temporary Restraining Order"), filed by Plaintiff Bryan Pease. (ECF No. 3).

**I. Background**

On March 18, 2014, Plaintiff filed a Petition for Temporary Restraining Order and Declaratory Relief to Remedy Violation of Civil Rights ("Petition") (ECF No. 1), the Application for Temporary Restraining Order (ECF No. 3), and a Proof of Service and declaration stating that the Summons and the Application for Temporary Restraining Order were served on Defendants City of San Diego ("City") and San Diego City Clerk Elizabeth Maland ("Maland") (ECF Nos. 3-2, 4).

Plaintiff asserts that he "is a serious contender for interim appointment to the San Diego City Council District 2 seat that was made vacant by the recent special mayoral election." (ECF No. 3 at 2). Plaintiff asserts that Defendant San Diego City Clerk Elizabeth Maland "is refusing to process the application papers of [Plaintiff] to be considered for the appointment, based on alleged failure to meet the technical terms of

the durational residency requirement" of San Diego Municipal Code ("SDMC") 27.0119, which provides that "[n]o individual is eligible to run for or hold the office of a Councilmember ... either by election or appointment, unless ... that individual was a registered voter of the district at least thirty calendar days prior to the date nomination papers were filed by the candidate ... or at least thirty calendar days prior to the date of filing an application for appointment to an elective office...." *Id*. at 3-4. Plaintiff contends:

> The decision by city staff was based on [Plaintiff]'s *most recent* registration in District 2 having taken place on February 19, 2014, which was less than 30 days prior to the March 17, 2014 filing deadline for nomination papers. However, [Plaintiff] also lived in District 2 from 2004-2007 and was a registered voter in the district during that entire time period. Thus, [Plaintiff] 'was a registered voter of the district at least thirty calendar days prior to the date nomination papers were filed.'
>
> Unlike Government Code section 25041, dealing with election eligibility for county boards, SDMC 27.0119 does not state that registration must have been for thirty days 'immediately' prior to filing papers. Because seven years is a longer period than thirty days, [Plaintiff] easily meets the requirement of SDMC 27.0119 that he 'was a registered voter of the district at least thirty calendar days prior to the date nomination papers were filed.'

*Id*. at 4 (quoting SDMC 27.0119(b)(2)). Plaintiff contends that "First Amendment rights to free speech and petitioning are at stake, and ... residency requirements are evaluated under strict scrutiny." *Id*. Plaintiff contends that he "has complied with the exact requirements of the ordinance to the letter and should not be denied an opportunity to present his case to the City Council for why he would be a good choice for this appointment." *Id*. Plaintiff "requests a temporary restraining order preventing Respondents from refusing to accept Petitioner's application to be considered by the City Council for the interim District 2 seat by reason of Petitioner allegedly failing to meet the thirty day durational residency requirement." *Id*. at 5-6.

The Petition alleges two causes of action pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), for violation of Plaintiff's "First Amendment rights to petition his government and to seek appointment to the District 2 seat." (ECF No. 1 ¶ 21). The Petition requests declaratory and injunctive relief and attorney fees. The Petition alleges that "[t]he City Council will

hold a hearing on April 14-15 [during] which candidates for the position will be considered. [Plaintiff] therefore requires emergency declaratory relief and a temporary restraining order to allow his application to be considered." *Id*. at 6.

In support of the Application for Temporary Restraining Order, Plaintiff submits his own affidavit which states that, on March 17, 2014, Plaintiff attempted to submit a completed application for appointment to Council District 2, but "City staff refused to process my application due to my most recent voter registration in District 2 having been on February 19, 2014." (Pease Decl. ¶ 4, ECF No. 3-1). Plaintiff states that he has "been a registered voter in District 2 for over three years, which was seven years prior to applying for this appointment. [Plainitff] lived at 230 Ivy Street, Apartment 2 and was registered to vote there from 2004 to approximately 2007." *Id*. ¶ 3. Plaintiff states that he has "only one residence, which is [his] home in Ocean Beach [in District 2], and [he has] lived there for over a year." *Id*. ¶ 6.

On March 28, 2014, Defendants filed an opposition to the Application for Temporary Restraining Order. (ECF No. 8). Defendants contend that the City "has consistently applied its residency requirements to all potential candidates for elective office since they were adopted." *Id*. at 5. Defendants contend:

> [Plaintiff]'s strained interpretation is not supported by the ordinary meaning of the language of the SDMC, it runs counter to the Council's intent for enacting the requirements, and would produce absurd results, such as allowing for the appointment and/or election of candidates who did not live in the district that they seek to represent. [Plaintiff] has not, and cannot, establish the four requirements needed for a [temporary restraining order] to issue, and, therefore, his application must be denied.

*Id*. at 5-6.

Defendants submit Maland's declaration and numerous exhibits. Maland states that, pursuant to the SDMC, the deadline for filing the required application forms for appointment to fill the Council District 2 vacancy was March 17, 2014, by 5:00 p.m. (Maland Decl. ¶ 5, ECF No. 8-1). Maland states that, on March 17, 2014, at 4:16 p.m., Plaintiff "came into [Maland's] office ... to file his application to be considered for appointment to fill the Council District 2 vacancy." *Id*. ¶ 6. Maland states that Plaintiff

"had registered to vote at his current address on-line on February 19, 2014, which meant that, as of March 17, 2014, he had only been a resident and registered voter at his current address for twenty-six (26) days." *Id.* ¶ 8. Maland states that "[s]ince [Plaintiff] did not meet the City's minimum residency requirements set forth in the SDMC, [Maland] informed him that [Maland] would be unable to accept his application papers." *Id.* ¶ 10. Maland states that "[t]he residency requirement was uniformly and consistently applied to all potential candidates, including [Plaintiff], for the current Council District 2 vacancy," and "the residency requirements contained in SDMC section 27.0119 have been uniformly and consistently applied in the same manner they were towards potential applicants for the current Council District 2 vacancy for every election and/or appointment that has taken place since [Maland] joined the Office of the City Clerk" in 2000. *Id.* ¶¶ 16, 18. Maland states that a "total of nineteen (19) have been confirmed as being qualified to be considered for the current Council District 2 vacancy appointment." *Id.* ¶ 17.

Defendants submit a memorandum from the San Diego City Attorney dated September 30, 1976, which summarized an earlier report from the City Attorney and stated:

> [B]ecause of the effect of the case of *Johnson v. Hamilton*, 15 Cal. 3d 461 (1975) the residency requirements for elective office found in Section 7 of the [City] Charter were no longer valid. We suggested the adoption of an ordinance to add a section to the Municipal Code providing for the maximum residency requirements permissible under the court ruling. Without the ordinance, the only requirement applicable is that an elective officer be a resident of the City or Council district at the time the officer takes office. We suggested that the Municipal Code be amended to include a longer residency period, that is, a candidate or appointee shall have been a resident of the City or district 30 days prior to the time of filing an application for nomination or appointment.

(ECF No. 8-3 at 8). Defendants submit the SDMC provision passed after the case of *Johnson v. Hamilton*, which states:

> No individual is eligible to run for or hold the office of a Councilmember, other than the Mayor, either by election or appointment, unless:
>
> > (1) that individual is, at the time of assuming such office, a resident and voter of the district from which nomination or appointment is sought, and

> (2) that individual was a registered voter of the district at least thirty calendar days prior to the date nomination papers were filed by the candidate pursuant to the nomination and write-in procedures in this article or at least thirty calendar days prior to the date of filing an application for appointment to an elective office pursuant to Section 27.0804 of this article.

SDMC § 27.0119(b), ECF No. 8-5 at 27. Defendants submit portions of the City Charter and the SDMC sections dealing with the procedure for filling vacancies in elective offices by appointment, SDMC §§ 27.0801-27.0809, and the procedures for being nominated to be on the ballot for an election to a municipal office, SDMC §§ 27.0201-27.0222. (ECF No. 8-5).

On March 31, 2014, Plaintiff filed a reply in support of the Application for Temporary Restraining Order. (ECF No. 9). Plaintiff states that he "has learned that the City Council hearing to fill the vacant District 2 seat will now be on April 7 rather than April 14 as previously thought." *Id*. at 1. Plaintiff attaches a declaration from Floyd Morrow, who was a deputy San Diego City Attorney in the 1960's, who was elected to the San Diego City Council in 1965, and who is "the longest serving member of the San Diego City Council in history, having served for over 12 years on the Council." (Morrow Decl. ¶ 2, ECF No. 9-1). Morrow asserts that the intention of the City Council in passing the ordinance at issue was not "to limit our own ability to appoint members to fill vacant seats on the City Council to only individuals who had been registered to vote in the district for the thirty days immediately prior to submitting nomination papers." *Id*. ¶ 4.

On April 2, 2014, Defendants filed objections to Morrow's declaration. (ECF No. 10). In deciding the pending motion, the Court does not consider Morrow's declaration. Accordingly, Defendants' objections to Morrow's declaration are denied as moot.

## II. Discussion

When the nonmovant has received notice, as here, the standard for issuing a temporary restraining order is the same as that for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion."

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). The party seeking preliminary injunctive relief has the burden of showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation omitted).

The interpretation of municipal ordinances and charters "is governed by rules of statutory construction." *Canfield v. Sullivan*, 774 F.2d 1466, 1468-69 (9th Cir. 1985) (citation omitted). Federal courts apply state rules of statutory construction when interpreting municipal laws. *See id.*; *see also McGraw v. City of Huntington Beach*, 882 F.2d 384, 387-88 (9th Cir. 1989). When California courts interpret a statutory provision:

> [O]ur paramount task is to ascertain the intent of those who enacted it. To determine that intent, we look first to the language of the [statutory] text, giving the words their ordinary meaning. If the language is clear, there is no need for construction. If the language is ambiguous, however, we consider extrinsic evidence of the enacting body's intent.

*Thompson v. Dep't of Corr.*, 25 Cal. 4th 117, 122 (2001) (citations omitted). After review of the submissions of the parties and applying the applicable rules of statutory construction, the Court does not conclude that Plaintiff has established that "section 27.0119 by its clear terms does not require voter registration in the district for 30 days 'immediately' prior to applying for appointment to the City Council seat for that district, but just registration for at least 30 days at some point prior to the application being made." (Compl. at 6, ECF No. 1). However, the Court finds that Plaintiff's interpretation of the statute is sufficiently plausible to raise "serious questions going to the merits" of his claims. *Cottrell*, 632 F.3d at 1135.

Plaintiff contends that he will be irreparably harmed if the Court does not grant the Application for Temporary Restraining Order because he will be denied "his First

Amendment rights to free speech and petitioning," by being "denied an opportunity to present his case to the City Council for why he would be a good choice for this appointment." (ECF No. 3 at 4). Defendants contend that Plaintiff will not suffer irreparable harm because it "is highly unlikely that [Plaintiff], whose eligibility would be clouded by this pending litigation at the time a decision must be made [by the City Council to fill the vacant District 2 seat], would be considered a viable candidate by the Council." (ECF No. 8 at 16-17). After considering the submissions of the parties, the Court finds that Plaintiff has demonstrated that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief.

Plaintiff contends that "[t]here is no harm to the City in the requested relief being granted, because if the City Council does not want to appoint [Plaintiff] to the position, there is nothing requiring it to do so." (ECF No. 3 at 5). Plaintiff contends that "granting a [temporary restraining order] would allow the democratic process to play out, which is also in the public interest." ECF No. 9 at 12; *see also* ECF No. 1 at 2 ("'The vigor of a democracy depends upon the continued infusion into the stream of public debate of the views and proposals of the many.'") (quoting *Johnson v. Hamilton*, 15 Cal. 3d 461, 471 (1975)). Defendants contend that "[t]o have the City's residency requirements applied differently to [Plaintiff] than to all other individuals that applied to be considered for the District 2 vacancy would not be equitable or in the public interest," and Plaintiff's "lawsuit is simply a desperate attempt to cure his own failure to timely register [to vote] at his current address." (ECF No. 8 at 16). After considering the submissions of the parties, the Court finds that Plaintiff has demonstrated that the balance of equities tips sharply in his favor, and that an injunction is in the public interest.

**III. Conclusion**

IT IS HEREBY ORDERED that the Application for Temporary Restraining Order is GRANTED. (ECF No. 3). From the date of this Order until otherwise ordered by this Court, Defendants City of San Diego and San Diego City Clerk Elizabeth Maland are restrained from refusing to accept Plaintiff Bryan Pease's application to be considered

by the City Council for the interim District 2 seat by reason of Plaintiff allegedly failing to meet the thirty-day durational residency requirement. No later than April 16, 2014, the parties shall file a status report.

DATED: April 4, 2014

**WILLIAM Q. HAYES**
United States District Judge